EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Alexander Aponte Ruperto<br><br>Recurrido | Certiorari<br><br>2018 TSPR 2<br><br>199 ____ |

Número del Caso: CC-2017-0876

Fecha: 4 de enero de 2018

Tribunal de Apelaciones:

Región Judicial de San Juan

Oficina del Procurador General:

Lcdo. Luis R. Román Negrón
Procurador General

Lcdo. Juan R. Ruiz Hernández
Procurador General Auxiliar

Sociedad para la Asistencia Legal:

Lcdo. Luis A. Gutiérrez Marcano

Materia: Sentencia del Tribunal con Opiniones de Conformidad y
Opiniones Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                 CC-2017-0876    *Certiorari*

Alexander Aponte Ruperto

    Recurrido

SENTENCIA
(Regla 50)

En San Juan, Puerto Rico, a 4 de enero de 2018.

    Examinada la *Petición de Certiorari* presentada por la parte peticionaria, así como el escrito presentado por la parte recurrida, se expide el auto y, al amparo de la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, se dicta Sentencia. Se confirma el dictamen del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos.

    Notifíquese inmediatamente por correo electrónico y por la vía ordinaria.

    Publíquese.

    Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de conformidad. El Juez Asociado señor Estrella Martínez emitió una Opinión de conformidad. El Juez Asociado señor Colón Pérez emitió una Opinión de conformidad. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión disidente, a la cual se unieron los Jueces Asociados señor Martínez Torres, señor Kolthoff Caraballo y señor Feliberti Cintrón. El Juez Asociado señor Martínez Torres emitió una Opinión disidente.

                        Juan Ernesto Dávila Rivera
                        Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Peticionario

        v.                 CC-2017-0876       *Certiorari*

Alexander Aponte Ruperto

      Recurrido

Opinión de conformidad emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 4 de enero de 2018.

> No en lenguaje de efímera conquista habló nuestro pueblo el 25 de julio de 1952, al proclamar la Constitución del Estado Libre Asociado de Puerto Rico, y dar vigencia, en su Carta de Derechos, a este lacónico mensaje relacionado con la justicia criminal: 'La detención preventiva antes del juicio no excederá de seis meses'. -Sánchez v. González, 78 DPR 849, 850 (1955) (J. Negrón Fernández, Op. particular).

¿Puede el Estado detener preventivamente por más de seis meses a un acusado si ocurre un fenómeno atmosférico que provoca el cierre temporal de los tribunales? Luego de analizar el texto constitucional, los propósitos del término máximo de detención preventiva, las expresiones que

se realizaron durante la Convención Constituyente, nuestra jurisprudencia y las consecuencias de las interpretaciones posibles, concluyo que los efectos catastróficos de un huracán no se le pueden oponer al acusado.

No hay duda de que los huracanes Irma y María presentaron retos únicos para nuestro ordenamiento jurídico. No obstante, bajo ningún concepto esto puede implicar que se suspendan o paralicen las protecciones constitucionales de los individuos. El derecho a no estar detenido preventivamente por un término mayor de seis meses tiene que prevalecer sobre el interés del Estado en asegurar la comparecencia del acusado al juicio.

I

El 4 de junio de 2017 el Ministerio Público presentó varias denuncias contra el Sr. Alexander Aponte Ruperto por violar los artículos 108 y 199(b) del Código Penal de Puerto, así como los artículos 5.04 y 5.15 de la Ley de Armas de Puerto Rico. Ese mismo día, el Tribunal de Primera Instancia determinó causa para arresto y, como no prestó fianza, se encarceló preventivamente al señor Aponte Ruperto. Posteriormente, se celebró la vista preliminar donde se determinó causa para acusar por las dos infracciones a la Ley de Armas. Consecuentemente, el Ministerio Público presentó las acusaciones correspondientes.

El juicio se señaló inicialmente para el 14 de septiembre de 2017, pero se suspendió porque no se completó

a tiempo el descubrimiento de prueba. Aunque se recalendarizó para el 11 de octubre de 2017, se suspendió de nuevo debido al Huracán María. En vista de lo anterior, se estableció que el juicio comenzaría el 13 de noviembre de 2017. No obstante, se suspendió nuevamente porque el señor Aponte Ruperto no fue trasladado de la institución penal al tribunal. Finalmente, el 7 de diciembre de 2017 el juicio se volvió a suspender porque en esa fecha el Ministerio Público entregó a la defensa varios documentos relacionados con el descubrimiento de prueba. Así las cosas, se señaló el juicio para el 21 de diciembre de 2017.

El 7 de diciembre de 2017 el señor Aponte Ruperto presentó una *Solicitud de Auto de Habeas Corpus*. Sostuvo que llevaba detenido desde el 4 de junio de 2017; es decir, en exceso de los seis meses dispuestos en la cláusula de detención preventiva. El 8 de diciembre de 2017 el Tribunal de Primera Instancia denegó la solicitud de habeas corpus.

Inconforme, el señor Aponte Ruperto presentó ante el Tribunal de Apelaciones un recurso de *certiorari* y una moción en auxilio de jurisdicción. Argumentó que el foro primario erró al denegar la solicitud de habeas corpus, a pesar de que se violó el término de seis meses de detención preventiva. Además, planteó que "[l]as condiciones creadas por el Huracán [María] no pueden operar en contra [suya] ni en contra de su presunción de inocencia ni de la protección constitucional contra una detención preventiva mayor de 180

días".[1] Por su parte, el Ministerio Público sostuvo que el tiempo que se paralizó el sistema judicial por razón de fuerza mayor debe ser excluido del cómputo de seis meses de detención preventiva.

El Tribunal de Apelaciones revocó la determinación recurrida. Entre otras cosas, el foro apelativo intermedio distinguió el derecho a juicio rápido de la cláusula de detención preventiva. Concluyó que la Convención Constituyente fue enfática al establecer que si no se celebra el juicio en seis meses procede la excarcelación del acusado. Señaló que "es obvio que los miembros de la Asamblea Constituyente conocían que nuestro archipiélago es propenso a embates de huracanes, fenómenos atmosféricos y otros actos de Dios".[2] Por consiguiente, concedió el auto de habeas corpus y ordenó la excarcelación inmediata del señor Aponte Ruperto.

En desacuerdo, el Ministerio Público presentó ante este Tribunal un recurso de *certiorari* y una moción en auxilio de jurisdicción. Este Tribunal paralizó los procedimientos del caso y ordenó al señor Aponte Ruperto mostrar causa por la cual no se debía revocar el dictamen del Tribunal de Apelaciones. En su comparecencia, el señor Aponte Ruperto sostuvo que el Ministerio Público no fue diligente al tramitar el caso, pues no tenía un protocolo o un plan de contingencia para atender esta situación. Por lo tanto,

---

[1] *Petición de certiorari*, págs. 6-7.
[2] Sentencia del Tribunal de Apelaciones, pág. 9.

argumentó que la dilación provocada por el Huracán María se le debe imputar al Estado.

## II

Antes de analizar la disposición controvertida, conviene señalar que nuestra Constitución "reconoce como derecho fundamental del ser humano el derecho […] a la libertad". Const. PR, Art. II, Sec. 7, LPRA, Tomo 1. Su carácter fundamental es innegable, pues "[e]l respeto que nos merezca la libertad determinará los senderos de nuestra sociedad como una verdaderamente civil y democrática". Pueblo v. Cruz Granados, 116 DPR 3, 26 (1984) (J. Negrón García, Op. conformidad). Por consiguiente, cuán central sea para cada uno de nosotros la libertad en nuestro ordenamiento constitucional y democrático, incidirá en nuestra interpretación sobre el término máximo de detención preventiva. Más aún si consideramos lo poco que se ha estudiado esta disposición constitucional puertorriqueña y las posturas distintas que ha generado.[3]

A. Texto constitucional y sus propósitos

La Sección 11 de nuestra Carta de Derechos contiene ciertas protecciones sin equivalente en la Constitución federal. En lo pertinente, la Sección establece que "[t]odo acusado tendrá derecho a quedar en libertad bajo fianza antes

---

[3] H. Padilla Martínez, La protección constitucional contra la detención preventiva en el Derecho Constitucional Puertorriqueño, 12 Rev. Acad. Puer. Juris. y Leg. 2 (2014); E.L. Chiesa Aponte, Contestación al Discurso del Licenciado Harry Padilla Martínez, 12 Rev. Acad. Puer. Juris. y Leg. 46 (2014).

de mediar un fallo condenatorio" y que "[l]a detención preventiva antes del juicio no excederá de seis meses". Const. PR, Art. II, Sec. 11, LPRA, Tomo 1. Ambas garantías están estrechamente relacionadas y concretizan de dos formas distintas el derecho fundamental a la libertad: por un lado, mediante la libertad bajo fianza, y por otro, con un término máximo de detención preventiva.[4]

Luego de que el Tribunal determina causa probable para arresto, el acusado tiene un derecho absoluto a quedar en libertad bajo fianza. Prestada la fianza, el acusado queda en libertad. No obstante, cuando el acusado no puede satisfacer la fianza procede su encarcelamiento, lo que se conoce como detención preventiva. Pueblo v. Pagán Medina, 178 DPR 228, 236 (2010). Desde ese momento el acusado tiene otra protección constitucional, pues desde que se le encarcela por no prestar la fianza no puede estar más de seis meses privado de su libertad, sin que se celebre un juicio en su contra. Ponce Ayala, Ex parte I, 179 DPR 18, 27-28 (2010). Para estos fines el juicio comienza con el juramento preliminar del jurado o, en los casos que se celebran por tribunal de derecho, cuando el primer testigo presta juramento. Íd., pág. 23; Pueblo v. Paonesa Arroyo, 173 DPR 203 (2008).

---

[4] Véase E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum, 1992, Tomo II, sec. 17.2, pág. 463; véase también Sánchez v. González, 78 DPR 849, 856-857 (1955) (J. Negrón Fernández, Op. particular).

Las consecuencias de violar este término de detención preventiva se establecieron claramente durante la Convención Constituyente. Al defender la propuesta del término máximo de seis meses en comparación con un término de dos meses, el delegado Sr. Alvarado expuso que "este término que estamos fijando es tan y tan perentorio que si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que **ponerlo en la calle** por un hábeas corpus inmediatamente que hayan pasado los seis meses".[5] Más adelante, ante una pregunta de otro delegado, el Sr. Alvarado reiteró que "[d]entro de los seis meses hay que celebrar el juicio. Si no se celebra el juicio dentro de los seis meses, **el hombre va para la calle** […] El término de seis meses es prudente, es razonable, corresponde a la legislación actual y podría funcionarse con él".[6] Además de la discusión durante la Convención Constituyente, nosotros también establecimos que "[s]i el imputado está detenido preventivamente en exceso de esos seis meses y sin que se haya iniciado el juicio, **deberá ser excarcelado**". Ponce Ayala, Ex parte I, supra, pág. 23 (énfasis suplido).

Aclarada la forma de computar los seis meses y las consecuencias que acarrea incumplir con el término de detención preventiva, conviene señalar algunos de sus

---

[5] 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico, 1961, pág. 1595 (énfasis suplido).
[6] Íd. (énfasis suplido).

propósitos. En una de las primeras expresiones al respecto,

el Juez Asociado Negrón Fernández afirmó que:

> Fue indudablemente inspirada en un propósito de fundamental política pública que la Convención Constituyente preceptuó que la prisión preventiva antes del juicio no excedería de 6 meses. La Convención obviamente estimó que un período mayor de detención en espera de juicio, en defecto de fianza, constituía un gravamen sobre el ciudadano que, presumiéndose inocente hasta el momento de recaer convicción, era restringido por el Estado--en el ejercicio de su poder de custodia--en el disfrute de su libertad personal, con el solo propósito de hacerle comparecer a juicio en su día. Consideró preferible rendir la custodia de un acusado después de ese período, antes que hacer vulnerable la integridad de su derecho a la presunción de inocencia--que también consagraba en la propia Constitución--si dejaba ilimitado el ejercicio de ese poder de custodia por la mera utilidad de que el Estado le tuviera disponible para llevarle al tribunal. Sánchez v. González, 78 DPR 849, 856-857 (1955) (J. Negrón Fernández, Op. particular); véase Iglesias v. Sria. Dept. Corr. y Rehab., 137 DPR 479, 481 (1994) (Sentencia).

Asimismo, recientemente expresamos que "[e]sta cláusula constitucional tiene el propósito de asegurar la comparecencia del acusado cuando éste no ha prestado la fianza, y a la vez, evita que se le castigue excesivamente por un delito que no ha sido juzgado". Ponce Ayala, Ex parte I, supra, pág. 22.

Varios juristas también han defendido el término máximo de detención preventiva. En su estudio sobre esta figura, el Lcdo. Padilla Martínez destacó varios propósitos:

> (1) Evitar que a la persona a quien ampara una presunción de inocencia sea restringida por el Estado en el ejercicio de su poder de custodia con el único propósito de hacerle comparecer a juicio. (2) Evitar el contrasentido de mantener encarcelada a una persona que se presume inocente,

cuya culpabilidad corresponde probar al Ministerio Público y que eventualmente puede ser exonerada.
(3) Impedir que se pueda encarcelar a una persona por más de seis meses sin celebrarle juicio.
(4) Promueve la confianza de la ciudadanía en el sistema judicial penal, conservando su dignidad e integridad.
(5) Que su detención se convierte en un castigo anticipado por un delito no juzgado.
(6) Asegurar que el acusado comparezca a los procedimientos cuando este no ha prestado fianza.
(7) Obligar al Estado a tomar medidas efectivas para someter a juicio al acusado dentro de los seis meses, pues de lo contrario corre el riesgo de continuar el proceso sin tener a su alcance el mecanismo coactivo del encarcelamiento. En otras palabras, y conforme al Diario de la Convención Constituyente, un mecanismo a favor del Ministerio Público "para que haga efectiva la maquinaria del pueblo en la administración de la justicia penal".
(8) Alentar una actuación diligente y rápida por parte del Ministerio Público en la celebración del juicio.
(9) En unión a otros términos reglamentarios de juicio rápido, promueve el enjuiciamiento pronto, de forma que las dilaciones del proceso no perjudiquen la defensa de un acusado.
(10) Y, promover una adecuada administración de los recursos judiciales.[7]

Por su parte, el profesor Chiesa Aponte señaló que la garantía constitucional de detención preventiva le parece bien concebida y que en esta zona se justifica otorgar una "factura más ancha".[8]

B. Jurisprudencia del Tribunal Supremo

Hasta el momento nuestra jurisprudencia se ha enfocado en qué se considera detención preventiva para fines de la cláusula constitucional y cómo se computa el término de seis

---

[7] H. Padilla Martínez, La protección constitucional contra la detención preventiva en el Derecho Constitucional Puertorriqueño, supra, págs. 10-12.
[8] E.L. Chiesa Aponte, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. UPR 83, 86 (1996).

meses. Véase Ponce Ayala, Ex parte I, supra; Pueblo v. Paonesa Arroyo, supra. Ahora bien, este Tribunal ha realizado varias expresiones que sirven de guía para la controversia que nos ocupa: si se debe excluir del término máximo de detención preventiva el tiempo que el Ministerio Público no pudo enjuiciar a un acusado debido al paso de un huracán. Veamos.

En Sánchez v. González, supra, el Sr. Bonifacio Sánchez Álvarez presentó una petición de habeas corpus. Sostuvo que procedía su excarcelación porque llevaba más de seis meses detenido sin celebrarse juicio, y que la Constitución establecía a su favor un derecho irrenunciable y absoluto. Por su parte, el Ministerio Público argumentó que ese derecho era renunciable y que el peticionario, por su conducta al solicitar y obtener la suspensión del juicio en dos ocasiones, renunció a ser excarcelado de acuerdo con dicha disposición constitucional. Este Tribunal emitió una sentencia breve donde ordenó la excarcelación del señor Sánchez Álvarez.

Por su parte, el Juez Asociado Negrón Fernández emitió una Opinión particular a la cual se unieron el Juez Presidente Snyder y el Juez Asociado Sifre Dávila. Además de discutir la razón de ser de la cláusula de detención preventiva y de citar las expresiones de los constituyentes, la Opinión de Negrón Fernández contiene unas expresiones pertinentes para nuestra controversia. Para atender el

argumento del señor Sánchez Álvarez de que su derecho era absoluto, así como el planteamiento del Estado de que sus actuaciones implicaron que renunció al derecho, el Juez Asociado Negrón Fernández aclaró que:

> El derecho que dimana de ese precepto, sin embargo, no es absoluto. Como es un derecho que madura normalmente por el mero lapso del tiempo, ni la ilegalidad ni el fraude de un acusado--en actos tendentes a producir la incapacidad del Estado para someterle a juicio--ampararían su ejercicio incondicional. Ese derecho, que no puede ser objeto de renuncia, tampoco puede ser objeto de rapto, y de mediar circunstancias del carácter de las apuntadas, el acusado no podría reclamarlo hasta que el Estado, pudiendo descargar prontamente su responsabilidad trayéndole a juicio, dejare de hacerlo. Íd., pág. 858.

Es decir, el **derecho no es absoluto**, pues existe una excepción: cuando el acusado actúe ilegal o fraudulentamente para impedir el juicio. Por consiguiente, según el Juez Asociado Negrón Fernández, cuando el acusado interfiera indebidamente con su enjuiciamiento no podrá oponerle al Estado su derecho a no ser detenido preventivamente por más de seis meses. En estas circunstancias, el término no podrá ser reclamado salvo que el Estado, pudiendo enjuiciar al acusado, no lo haga.

Por otro lado, el Juez Asociado Negrón Fernández destacó que, aunque "pudiera existir justa causa para la no celebración del juicio dentro del término estatutario señalado [en el Código de Enjuiciamiento Criminal], ello no surtiría el efecto de prolongar la prisión en espera de juicio por más de 6 meses, ni de impedir la excarcelación

del acusado vencido dicho término". Sánchez v. González, supra, pág. 855. Por lo tanto, aun cuando los términos de juicio rápido pueden estar sujetos a justa causa, el término máximo de detención preventiva no puede prolongarse por esa razón. De forma similar, al distinguir la cláusula de juicio rápido de la cláusula de detención preventiva, el profesor Chiesa Aponte expresó que "la diferencia es que la cláusula de juicio rápido admite las dilaciones por justa causa y no es decisiva la 'tiesa aritmética'".[9]

Discutido el caso de Sánchez v. González, supra, conviene examinar el caso de Pueblo v. Pagán Medina, supra. En Pueblo v. Pagán Medina, supra, la defensa del Sr. Benjamín Pagán Medina le solicitó al tribunal de instancia que determinara si estaba capacitado para ser procesado criminalmente. El tribunal celebró varias vistas y determinó que el señor Pagán Medina era procesable. Debido a que pasaron varios meses desde la solicitud, el señor Pagán Medina presentó una petición de habeas corpus donde alegó que se le había confinado en exceso de los seis meses dispuestos en la Constitución. En cambio, el Ministerio Público argumentó que el término de detención preventiva no

---

[9] E.L. Chiesa Aponte, Contestación al Discurso del Licenciado Harry Padilla Martínez, supra, pág. 49; véase Pueblo v. García Vega, 186 DPR 592, 610 (2012). Véase también E.L. Chiesa Aponte, Derecho Procesal Penal, 80 Rev. Jur. UPR 681, 689-690 (2011) ("El párrafo final de la sección once del Artículo II de la Constitución de Puerto Rico dispone que 'la detención preventiva antes del juicio no excederá de seis meses'. Este término, distinto a los términos de juicio rápido codificados en la Regla 64 (n) de Procedimiento Criminal, no se interrumpe por justa causa").

incluye el período durante el cual el tribunal determina si el acusado es procesable.

Este Tribunal atendió la controversia. En primer lugar, citamos con aprobación la Opinión del Juez Asociado Negrón Fernández en Sánchez v. González, supra, a los efectos de que la protección constitucional sobre la detención preventiva no es absoluta. Analizamos la Regla 239 de Procedimiento Criminal, 34 LPRA Ap. II, la cual establece que "[n]inguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada". Sobre esta prohibición, afirmamos que "se fundamenta en la normativa jurídica medular que establece que encausar a una persona no procesable viola el debido proceso de ley". Pueblo v. Pagán Medina, supra, pág. 238. Por otro lado, también discutimos la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II, la cual establece un mecanismo para que el tribunal evalúe la procesabilidad del acusado y garantice su debido proceso de ley. Pueblo v. Pagán Medina, supra, pág. 239.

Basándonos en las disposiciones citadas y en el debido proceso de ley, concluimos que mientras se evalúa la condición mental del imputado, "el Ministerio Público se encuentra, a su vez, legal y constitucionalmente vedado — 'con las manos atadas'— de proseguir con el procesamiento criminal que tiene el deber de ejecutar". Íd., pág. 243. Por lo tanto, establecimos otra excepción al término máximo de detención preventiva: como las Reglas de Procedimiento

Criminal y el debido proceso de ley impiden que se celebre un juicio mientras se determina la procesabilidad de un acusado, el tiempo que dure esa determinación no contará para el cómputo de los seis meses.

Cónsono con lo anterior, en su análisis del caso, el profesor Chiesa Aponte sostuvo que "el impedimento que surge de la no procesabilidad va más allá de la justa causa a la que se alude en la regla 64(n), ello es una exigencia del debido proceso de ley".[10] Es decir, nuestra decisión en Pueblo v. Pagán Medina, supra, no se fundamenta en que el Ministerio Público tiene justa causa para incumplir con el término de detención preventiva, sino en que el debido proceso de ley le impide constitucionalmente al Estado procesar a un acusado mientras se determina su procesabilidad. Es justamente esta prohibición constitucional la que posibilita que se interprete que el término que dure el trámite de procesabilidad quede excluido del término de detención preventiva.

C. Consecuencias de las distintas interpretaciones

Conviene destacar las consecuencias de las distintas interpretaciones sobre esta controversia. El Ministerio Público sugiere que los días que los tribunales permanecieron cerrados como consecuencia de ciertos eventos atmosféricos no se consideren al computar el término de detención preventiva. Por lo tanto, el acusado permanecería

---

[10] E.L. Chiesa Aponte, Contestación al Discurso del Licenciado Harry Padilla Martínez, supra, págs. 56-57

encarcelado a pesar de que lleva más de seis meses privado de su libertad sin celebrarse el juicio.

En cambio, si se interpreta que los efectos de los huracanes sobre el Ministerio Público y los tribunales no deben considerarse para computar el término máximo de seis meses, la consecuencia es que el acusado se excarcela y el juicio continúa con este en libertad. Pueblo v. Ortiz, 76 DPR 247, 249 (1954). Por consiguiente, "el acusado no queda exento de los cargos presentados en su contra, sino que se continuará la celebración del juicio como si estuviera bajo fianza, es decir, en libertad". Pueblo v. Paonesa Arroyo, supra, pág. 211. Para esta situación, la Regla 218(c) de Procedimiento Criminal, 34 LPRA Ap. II, le permite al tribunal imponer las condiciones razonables que estime necesarias para garantizar que el acusado no sea un peligro para la ciudadanía y evitar que evada la jurisdicción del tribunal.

III

Aclarado el marco constitucional y legal aplicable, corresponde analizar si las dilaciones que causaron fenómenos atmosféricos como Irma y María se deben considerar al computar el término constitucional de detención preventiva. Por los fundamentos siguientes, concluyo que el término máximo de seis meses no admite excepciones por "justa causa", ni se debe suspender o paralizar ante el paso de un evento atmosférico de esta naturaleza. Por consiguiente,

considero que la garantía constitucional no permite privar al acusado de su libertad por más de seis meses en un escenario como este.

En primer lugar, reitero que las garantías puertorriqueñas de fianza y detención preventiva confieren una factura más ancha en comparación con la Constitución federal. Estas protecciones abarcadoras no pueden estar sujetas a interpretaciones que reduzcan injustificadamente el diseño original. Después de todo, estas garantías concretizan valores fundamentales más amplios, como la libertad y la presunción de inocencia.[11] Estos, como sabemos, son de importancia palmar en nuestro ordenamiento constitucional y democrático. Tales valores de libertad y presunción de inocencia justifican que a una persona no se le prive de su libertad en exceso de los seis meses dispuestos en la Constitución, independientemente de que ocurra un fenómeno atmosférico de esta naturaleza. Las protecciones constitucionales no están sujetas a pronósticos del tiempo. Este Tribunal debe velar porque la Constitución aplique tanto en tiempos de tempestad, como en los periodos de calma.

En segundo lugar, la interpretación expuesta respeta el texto constitucional: la detención preventiva antes del juicio no excederá de seis meses. Según concluyó el Tribunal

---

[11] Véase Pueblo v. Paonesa Arroyo, 173 DPR 203 (2008) ("La excarcelación de un acusado al amparo de la cláusula de detención preventiva está vinculable, indudablemente, a la primacía del derecho a la libertad y a la presunción de inocencia").

de Apelaciones, la Convención Constituyente no era ajena a los fenómenos atmosféricos. Por ejemplo, la Constitución expresamente dispone que, durante un estado de emergencia, el Gobernador puede trasladar la sede del Gobierno. Const. PR, Art. VI, Sec. 17, LPRA, Tomo 1. Al atender cuáles serían esas situaciones de emergencia, discutieron los casos de fuerza mayor.[12] Aunque un delegado planteó que el Gobernador de Puerto Rico tiene poderes inherentes para manejar una emergencia y que facultarlo a cambiar la sede era superfluo, la Convención Constituyente entendió apropiado disponer expresamente que, en casos de emergencia, el Gobernador podrá mover la sede. De modo que nada impedía que se aprobara un texto que contemplara el efecto que los eventos de fuerza mayor tendrían en el término de detención preventiva. No se hizo, lo cual opera contra una interpretación que limite la garantía constitucional.

En tercer lugar, los propósitos del término máximo de detención preventiva también validan que se excarcele al acusado, independientemente de que los tribunales estuvieron cerrados. El Ministerio Público pretende que interpretemos que el único propósito de la cláusula constitucional es obligarlo a ser diligente en la celebración del juicio. Aunque procurar que el Estado sea diligente es uno de los propósitos de la cláusula, también están evitar un castigo excesivo, desalentar que se constituya un gravamen sobre un

---

[12] 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico, 1961, págs. 2119-2126.

ciudadano que se presume inocente, vindicar la integridad de su derecho a la presunción de inocencia, entre otros. Sánchez v. González, supra; Ponce Ayala, Ex parte I, supra.

En cuarto lugar, la intención original de que el término máximo es "tan y tan perentorio que si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle por un hábeas corpus inmediatamente que hayan pasado los seis meses", no es cónsona con una interpretación que, en lugar de hacer el término verdaderamente perentorio, permita que se prorrogue a discreción del Estado.[13] Por lo tanto, la postura del Ministerio Público no tiene apoyo directo en la discusión que ocurrió durante la Convención Constituyente.

En quinto lugar, aunque es cierto que Sánchez v. González, supra, y Pueblo v. Pagán Medina, supra, reconocen que la prohibición constitucional contra una detención preventiva que exceda los seis meses no es absoluta, lo cierto es que ambos casos establecen dos excepciones muy particulares que no están presentes en este caso. La primera es si el acusado "raptó" el proceso criminal, pues mediante fraude o actos ilegales produjo la incapacidad del Estado en someterlo a juicio. Sánchez v. González, supra. La segunda es si el debido proceso de ley veda al Estado de encausar al acusado porque aún no se ha determinado que es procesable. Pueblo v. Pagán Medina, supra. Por lo tanto, este Tribunal

---

[13] 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico, 1961, pág. 1595.

nunca ha resuelto que la imposibilidad del Estado de celebrar un juicio se le debe oponer a un ciudadano que no provocó esa dificultad.

Además, tanto la jurisprudencia de este Tribunal como los tratadistas distinguen los términos de juicio rápido, que permiten argumentar justa causa, y el término máximo de detención preventiva, que no lo admite. Sánchez v. González, supra.[14] No hay duda de que "ambas disposiciones tienen el propósito común de agilizar los procedimientos". Pueblo v. Paonesa Arroyo, supra, pág. 215. Ahora bien, la Asamblea Constituyente estimó que era necesario ir más allá del derecho a un juicio rápido y, por lo tanto, estableció un término máximo de detención preventiva. De este modo, dio carácter constitucional a un término específico, en lugar de deferir el asunto a la Asamblea Legislativa, como lo hizo con los términos de juicio rápido.

Por otro lado, nuestra decisión en nada afecta que el proceso criminal continúe, solo implica que se debe realizar con el acusado en libertad. Pueblo v. Ortiz, supra. Por lo tanto, el acusado estaría en la misma posición que cualquier acusado que presta fianza y así evita que se le detenga preventivamente. Pueblo v. Paonesa Arroyo, supra, pág. 211. Además, los riesgos que presenta excarcelarlo se pueden atender adecuadamente mediante la Regla 218(c) de Procedimiento Criminal, supra.

---

[14] Véase E.L. Chiesa Aponte, Derecho Procesal Penal, supra, pág. 690.

En fin, no existe justificación alguna para limitar el alcance de esta protección constitucional. En un intento adicional por validar su postura, el Ministerio Público cita las resoluciones que emitió este Tribunal para atender esta emergencia. Sin embargo, esas resoluciones no tienen ni pueden tener el efecto de enmendar la Constitución. La garantía constitucional favorece al señor Aponte Ruperto. La dificultad del Estado, incluyendo los tribunales, en lograr el enjuiciamiento no admite que se prive a un individuo de su libertad por un término mayor del constitucionalmente permitido.

IV

En este caso, el 4 de junio de 2017 se encarceló preventivamente al señor Aponte Ruperto. El 7 de diciembre de 2017 el señor Aponte Ruperto presentó una solicitud de habeas corpus, pues llevaba detenido en exceso de los seis meses dispuestos en cláusula de detención preventiva. Como estuvo detenido preventivamente en exceso del término de seis meses (180 días), el Tribunal de Apelaciones resolvió correctamente que procedía revocar el dictamen del Tribunal de Primera Instancia y excarcelar al acusado.

Por los fundamentos expuestos, estoy conforme con la Sentencia emitida por este Tribunal. Hoy rechazamos convertir en "efímera conquista" el reconocimiento constitucional de un término máximo de detención preventiva. Es cierto que el Huracán María afectó todos los componentes

de la sociedad puertorriqueña, incluyendo a la Rama Judicial que presido. Sin embargo, un acto inevitable de la naturaleza no se puede utilizar para justificar que a un individuo, al cual todavía no se le ha probado ningún delito, se le prive de su libertad por un término mayor al que nuestros constituyentes entendieron tan extremo, que idearon una prohibición constitucional sin precedentes.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

   Peticionario

          v.                          CC-2017-0876      Certiorari

Alexander Aponte Ruperto

   Recurrido

Opinión de conformidad emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 4 de enero de 2018.

Estoy conforme con la determinación de este Tribunal de confirmar el dictamen del Tribunal de Apelaciones, el cual decidió excarcelar al Sr. Alexander Aponte Ruperto. Al así hacerlo, este Tribunal respeta la Carta de Derechos de la Constitución de Puerto Rico y el término de detención preventiva consagrado en ella. Tal término de seis meses fijado en nuestra Constitución para la detención preventiva no admite excepciones ni está sujeto a extensiones por justa causa. Por tanto, los sumariados, a quienes les cobija la presunción de inocencia, no pueden ser privados de su libertad en exceso del

referido término. Y es que la propia Constitución y el historial de la Convención Constituyente son claros en que tal derecho no tiene excepción alguna. El mandato es claro: si un acusado encarcelado no es llevado a juicio dentro del término de seis meses, debe ser excarcelado y, en libertad, continuará su proceso criminal.

Para una cabal compresión de este asunto, procedo a exponer un breve resumen del contexto fáctico y procesal en el que se desató la cuestión planteada ante nos.

**I**

El 4 de junio de 2017, el Ministerio Público presentó varias denuncias en contra del Sr. Alexander Aponte Ruperto (señor Aponte o recurrido) y se determinó causa probable para arresto. Al no prestar la fianza impuesta, el recurrido fue encarcelado en detención preventiva. Luego de celebrada la vista preliminar el 7 de agosto de 2017, se presentaron las acusaciones correspondientes.

Al mes siguiente, los huracanes Irma y María impactaron a Puerto Rico, por lo que la Rama Judicial suspendió sus labores hasta el 1 de noviembre de 2017.[15] Así, una vez

_____

[15]Véase, <u>In re: Extensión de términos ante el paso del Huracán María</u>, res. 18 de septiembre de 2017, 2017 TSPR 174; <u>In re: Medidas judiciales ante el paso del Huracán Irma</u>, res. 5 de septiembre de 2017, 2017 TSPR 167, en las cuales, en esencia, este Tribunal paralizó los términos judiciales y suspendió las labores de la Rama Judicial durante ambas emergencias. <u>Véase, además, In re: Extensión de términos ante el paso del Huracán Irma y la pérdida del servicio eléctrico</u>, res. 11 de septiembre de 2017, 2017 TSPR 169, en el cual se extendió la paralización por el Huracán Irma hasta el 13 de septiembre de 2017, e <u>In re: Extensión de términos ante el paso del Huracán María</u>, res. 16 de octubre de 2017, 2017 TSPR 175, en el cual ordenamos que a partir

reanudadas las labores suspendidas, el Tribunal de Primera Instancia fijó la celebración del juicio en su fondo para el 13 de noviembre de 2017. Para esta fecha, el término de los seis meses de la detención preventiva aún no había expirado.

Ahora bien, el juicio no se pudo celebrar en la referida fecha dado a las siguientes circunstancias: el señor Aponte no fue trasladado al tribunal; uno de los testigos del Estado no compareció; la abogada de defensa se encontraba en otra de las salas del tribunal; y aún estaban pendientes asuntos del descubrimiento de prueba. Asimismo, se desprende de la minuta, que el Ministerio Público solicitó que se citara a un testigo con una orden para mostrar causa, lo que fue concedido por el tribunal. De este modo, el foro primario reseñaló la fecha del juicio para el 7 de diciembre de 2017. En esta fecha, el juicio nuevamente fue suspendido porque el Ministerio Público entregó ese mismo día nueva prueba a la defensa y había una controversia sobre el expediente médico del señor Aponte.

Así las cosas, y tras haber transcurrido seis meses desde su encarcelación, el señor Aponte presentó un recurso de hábeas corpus, que fue denegado por el Tribunal de Primera Instancia. Inconforme con tal determinación, el señor Aponte acudió al Tribuna de Apelaciones mediante un recurso de

---

del 1 de noviembre de 2017 se reanudarían los casos y las vistas en el Tribunal de Primera Instancia. A su vez, dispusimos que la paralización de los términos culminaría el 1 de diciembre de 2017.

*certiorari.* Al aplicar correctamente la garantía constitucional en controversia, es decir, el término de la detención preventiva, el foro apelativo intermedio revocó la resolución recurrida y ordenó la excarcelación inmediata del señor Aponte. Ello, pues el recurrido había estado encarcelado más allá del término de seis meses sin que el juicio en su contra hubiese comenzado, violándose de esta forma su derecho constitucional.

En desacuerdo con lo anterior, la Oficina del Procurador General presentó el recurso de autos, junto con una moción en auxilio de jurisdicción. El Procurador General plantea que el término de detención preventiva quedó interrumpido por la suspensión de las labores en el sistema judicial a consecuencia del paso de los huracanes Irma y María por Puerto Rico, por lo que hay justa causa para la extensión del término de seis meses consagrado en nuestra Constitución. Ante tal escenario, el 22 de diciembre de 2017, mediante resolución, este Tribunal paralizó los procedimientos y le concedió un término al señor Aponte para que fijara su posición, lo cual cumplió oportunamente.

Con estos hechos en mente, procedo a analizar el derecho aplicable.

## II

La Constitución de Puerto Rico reconoce varios derechos fundamentales del ser humano, como el derecho a la vida, a la libertad y al debido proceso de ley. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. A su vez, está

íntimamente relacionado con estos, el derecho constitucional a la presunción de inocencia que permea en los procesos criminales. Íd., Sec. 11.

Como corolario de los derechos constitucionales antes mencionados, piedras angulares de nuestro sistema de justicia, está la cláusula constitucional que prohíbe la detención preventiva más allá del término de seis meses. Íd. Ello se refiere al período anterior al juicio en el cual el acusado se encuentra privado de su libertad de manera preventiva por no haber prestado la fianza impuesta. Pueblo v. Méndez Pérez, 193 DPR 781, 787 (2015). Véase, además, Ruiz v. Alcaide, 155 DPR 492, 503 (2001); Pueblo v. González Vega, 147 DPR 692, 701 (1999). De este modo, esta cláusula constitucional tiene un propósito dual: asegurar la comparecencia del acusado al procedimiento criminal en su contra y, a su vez, evitar que se le castigue excesivamente por delitos por los que no ha sido juzgado. Pueblo v. Pagán Medina, 178 DPR 228, 236 (2010).

A esos efectos, la Convención Constituyente dispuso de este mecanismo autoejecutable de protección a las personas detenidas por no prestar fianza, por lo que "colocó como eje del sistema procesal la libertad personal por sobre cualquier fundamento de garantía de comparecencia a juicio o a cualquier procedimiento de naturaleza criminal". O.E. Resumil y J.R. Lozada Medina, La Oficina de Servicios con Antelación al Juicio: nuevo acercamiento para la

integración del sistema de justicia criminal, 67 Rev. Jur. UPR 507, 508 (1998). Precisamente, esta protección constitucional se cimienta en la presunción de inocencia, pues pretende evitar que a una persona se le prive excesivamente de su libertad por un delito por el cual no se le ha juzgado. Pueblo v. Pagán Medina, supra, pág. 236. Véase, además, O.E. Resumil, Práctica jurídica de Puerto Rico: Derecho Procesal Penal, New Hampshire, Ed. Butterworth, 1993, T. 2, Sec. 25.4(a), pág. 248; L. Rivera Román, Los derechos de los acusados en los procedimientos penales bajo la Constitución de Puerto Rico y los Estados Unidos. 46 Rev. Jur. U. Inter. P.R. 417, 436 (2012). Por consiguiente, esta garantía no es un acto de gracia, sino que sirve de instrumento para salvaguardar un derecho mayor, entiéndase, la presunción de inocencia. Resumil y Lozada Medina, *supra*.

De una simple lectura a la cláusula constitucional sobre la detención preventiva, así como de la discusión integral que surge del Diario de Sesiones de la Convención Constituyente, se desprende claramente que el término allí dispuesto es de caducidad. Las siguientes expresiones surgidas durante tal discusión así lo confirman:

> Sr. ALVARADO: […] Este término que estamos fijando es tan y tan perentorio que **si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle** por un hábeas corpus inmediatamente que hayan pasado los seis meses. […]

Sr. RIVERA COL[Ó]N: ¿Me permite una pregunta? ¿Esto dice la detención preventiva antes del juicio?

Sr. ALVARADO: Antes del juicio, antes de someterse a juicio. No es que tiene, es que **no puede pasar de los 6 meses. Si llega a seis meses un día, el hombre se va a la calle por un hábeas corpus.** Puede ser a los dos meses, puede ser a los dos días, puede ser a los tres días, pero no puede ser después de seis meses.

Sr. RIVERA COL[Ó]N: ¿No puede ser después de seis meses?

Sr. ALVARADO: **Dentro de los seis meses hay que celebrar el juicio. Si no se celebra el juicio dentro de los seis meses, el hombre va para la calle.** […] El término de seis meses es prudente, es razonable, corresponde a la legislación actual y podría funcionarse con él. […]
. . . . . . . .

Sr. REYES DELGADO: […] Y a eso es a lo que vamos nosotros encaminando este precepto: que se usen los seis meses de que la legislación local ha tenido a bien proveer al ministerio público para que haga efectiva la maquinaria del pueblo en la administración de la justicia penal. Pero que después, por no haber una disposición de esta naturaleza, no se burle lo que se ha creído que es suficiente para procesar a un hombre y mandarlo a la cárcel. […]

. . . . . . . .

Sr. GONZ[Á]LEZ BLANES: […] Lo que se quiere evitar con esta disposición es que un individuo esté preventivamente detenido por tiempo [i]limitado, como acontece muchas veces en los tribunales. Y no se refiere a la obligación que tiene el fiscal de presentar la acusación dentro de los 60 días ni al derecho que tiene el acusado a que se le celebre juicio, de acuerdo con el Código de Enjuiciamiento Criminal, dentro de los 120 días. […]

**Pero entiendo también que debe aparecer claramente que lo que se quiere poner aquí es que el acusado tiene derecho a que se le celebre el juicio no más tarde de 6 meses cuando está preso. O sea, que la detención preventiva para la celebración del juicio no debe ser mayor de seis meses.** Claro que si el acusado presta fianza, la situación es completamente distinta. […]. 3 Diario de Sesiones

de la Convención Constituyente de Puerto Rico 1594-1596 (1961) (énfasis suplido).[16]

Como podemos apreciar, los Delegados tenían muy presente que el término máximo de la detención preventiva no estaría sujeto a extensión alguna. Ello, dado a que resulta más que razonable el término de seis meses para celebrarse el juicio. A esos efectos, mantener encarcelada a una persona, a quien le cobija la presunción de inocencia, en exceso del referido término es inconstitucional. De este modo, fue la voluntad de la Convención lo siguiente:

[A]un cuando pudiera existir de parte del Estado justa causa para la no celebración del juicio dentro del término estatutario señalado, ello no surtiría el efecto de prolongar la prisión en espera de juicio por más de 6 meses, ni de impedir la excarcelación del acusado vencido dicho

---

[16] De igual modo, surgen un sinnúmero de otras expresiones que reafirman lo aquí expuesto, a saber:

Sr. ALVARADO: Lo que dice el texto es que si a los seis meses **de estar él detenido no se le ha celebrado juicio, hay que ponerlo en la calle.** Ahora, el proceso sigue, porque eso no lo estamos rigiendo con esta disposición.

. . . . . . . .

Sr. SOTO: **Una persona está detenida y a los seis meses no se le ha celebrado juicio, entonces, naturalmente de acuerdo con esto, esta persona debe ser puesta en libertad.**

. . . . . . . .

Sr. BEN[Í]TEZ: […] **Esto lo que quiere decir es que en los casos donde no ha mediado juicio, una persona no puede estar detenida en la cárcel por más de seis meses.** Llega el día del último mes de los seis meses y entonces lo ponen en la calle y eso no impide que se celebre juicio; pero se le celebra juicio ahora estando como si estuviera bajo fianza, sin estarlo. 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 1597 (1961) (énfasis suplido).

término, no obstante el que para los fines de juicio rápido, en su expresión estatutaria, dicha justa causa pudiera impedir el sobreseimiento del proceso. Sánchez v. González, 78 DPR 849, 855 (1955) (Negrón Fernández, Opinión particular).

En ese sentido, las razones atribuibles a la demora para la celebración del juicio resultan inconsecuentes para fines de esta garantía constitucional que se activa con el mero pasar del tiempo. Así lo expone el Prof. Ernesto Chiesa Aponte, al establecer que el término de detención preventiva, a diferencia de los términos de juicio rápido, no se interrumpe por justa causa. E. Chiesa Aponte, Derecho Procesal Penal, 80 Rev. Jur. UPR 681, 689-690 (2011).[17] Y es que cualquier otro razonamiento resulta inconsistente con la firme expresión en el texto constitucional y el historial enmarcado en el Diario de Sesiones de la Convención Constituyente. Una vez transcurren los seis meses desde la detención sin haber sido sometido al juicio

---

[17]Asimismo, el profesor y ex juez del Tribunal de Apelaciones, Luis Rivera Román, distingue el derecho a la detención preventiva y el derecho a juicio rápido. Este explica que la detención preventiva evita que la encarcelación antes del comienzo del juicio exceda de seis meses y, por otro lado, el derecho a juicio rápido tiene como propósito que el inicio del juicio no se afecte por dilaciones excesivas e irrazonables. De igual modo, la consecuencia del exceso del término de la detención preventiva es que se libera al imputado y el caso continúa como si estuviera en libertad bajo fianza. Por el contrario, cuando ocurre una violación al derecho a juicio rápido, el caso es desestimado y regresa a la etapa inicial de causa probable para arresto. L. Rivera Román, Los derechos de los acusados en los procedimientos penales bajo la Constitución de Puerto Rico y los Estados Unidos. 46 Rev. Jur. U. Inter. P.R. 417, 436 (2012). Como podemos apreciar, la Academia coincide en que el derecho a la detención preventiva y el derecho a juicio rápido no pueden equipararse como un solo derecho, sino que tienen propósitos y consecuencias distintas.

correspondiente, el detenido tiene derecho a ser excarcelado y permanecer en libertad por el resto del tiempo que dure el procedimiento en su contra. Pueblo v. Paonesa Arroyo, 173 DPR 203, 211 (2008). Así muy bien lo resume el ex Juez Asociado señor Rebollo López, aunque en el contexto de otra controversia, en su Opinión disidente en Ruiz v. Alcaide, supra, págs. 514-515:

> A nuestro modo de ver las cosas, *este periodo es uno de caducidad.* **Esto es, una vez comienza a discurrir el mismo, desde la fecha misma en que el imputado es ingresado en prisión por no haber podido satisfacer la fianza, el mismo transcurre *sin* interrupción.** *Ciertamente, para que el referido período transcurra ininterrumpidamente, es necesario que concurran dos requisitos, a saber: que el imputado se encuentre bajo el control efectivo del Estado y que éste esté "en espera de juicio".*

> Así, una vez han transcurrido los seis meses de confinamiento en espera de la celebración del juicio, cualquier tiempo en exceso de éstos raya en un **confinamiento ilegal** y esa ilegalidad puede plantearse en un procedimiento de hábeas corpus. Claro está, el hecho de que la detención en exceso de ese período sea en sí ilegal, no significa que el proceso no pueda continuar; es decir, no por ello el acusado queda exonerado del delito.

> Dicho de otra forma, la excarcelación en esta clase de situación tiene, como única consecuencia, la celebración del juicio estando el imputado en el disfrute de su libertad. De esta manera se logra un balance adecuado entre el poder de custodia del Estado sobre el imputado-*cuyo propósito es hacer efectivo su interés de tenerle disponible para llevarle al tribunal-* y el derecho de éste a disfrutar de su libertad en función de la presunción de inocencia que le

asiste. (énfasis suplido) (citas omitidas).[18]

A diferencia de la cláusula constitucional de juicio rápido, donde los términos se fijaron estatutariamente, el término aquí en pugna es de estirpe constitucional, pues la cláusula diáfanamente establece el término fatal de seis meses. Por ello, no está sujeto al análisis de justa causa. No cabe otra interpretación ante los derechos de gran envergadura que están aquí en juego, a saber: la libertad, la presunción de inocencia y el debido proceso de ley. Estos deben ser interpretados de manera tal que cumplan su propósito de proteger a los ciudadanos que han sido privados de su libertad por parte del Estado.

Por otra parte, no podemos perder de perspectiva que la protección contra la detención preventiva en exceso de seis meses está directamente atado al derecho a la fianza y a la presunción de inocencia. Ello pues, la cláusula constitucional protege a las personas que no pudieron prestar una fianza para lograr su libertad en espera de su juicio. Por tanto, son personas que por su condición económica están privadas de su libertad. De este modo, las personas de escasos recursos económicos están expuestas a sufrir las consecuencias suscitadas en el caso de autos, y

_____

[18]Adviértase, que el asunto atendido en ese caso versaba sobre la detención preventiva de un imputado hallado judicialmente no procesable que estaba internado en una institución psiquiátrica. Allí, una Mayoría de este Tribunal determinó que una persona en tales circunstancias no está cobijada con tal protección constitucional, pues no está sujeta a la celebración de un juicio a consecuencia de su incapacidad mental para enfrentarse a la naturaleza y al procedimiento criminal en su contra.

que su derecho a la libertad y a la presunción de inocencia sean vulnerados.

Por último, debemos reconocer que, independientemente de nuestra garantía constitucional autóctona, no podemos obviar que en el campo de los derechos humanos las personas privadas de su libertad nunca están de *jure*, en un vacío jurídico, pues tienen la protección jurídica del derecho interno, el derecho internacional de los derechos humanos y, como tercera protección, el derecho internacional humanitario. A. de Zayas, <u>Derechos humanos y detención por tiempo indeterminado</u>, Revista Internacional de la Cruz Roja, 2005, https://www.icrc.org/spa/resources/documents/article/review/6e3m3d.htm. En ese sentido, debemos tener presentes normas universales de los derechos humanos tales como el Artículo 9 de la Declaración Universal de Derechos Humanos que prohíbe las detenciones arbitrarias y el Artículo 9 del Pacto Internacional de Derechos Civiles y Políticos que prohíbe las detenciones ilegales. <u>Véase</u>, Declaración Universal de Derechos del Hombre, A.G. Res. 217 (III) A, N.U. Doc. A/RES/217 (III) (10 de diciembre de 1948), http://www.un.org/es/comun/docs/?symbol=A/RES/217 (III); Pacto Internacional de Derechos Civiles y Políticos, A.G. Res. 2200 (XXI), N.U. Doc. A/RES/2200 (XXI) (16 de diciembre de 1966), [http://www.un.org/es/comun/docs/](http://www.un.org/es/comun/docs/)?symbol=A/RES/2200(XXI)&Lang=S&Area=RESOLUTION.

## III

En el caso de autos, el señor Aponte estuvo encarcelado de manera preventiva durante un período mayor de seis meses sin ser enjuiciado. Ello, en abierta contravención a la garantía consagrada en nuestra Constitución. Como mencionamos, este término de seis meses es de caducidad. En consecuencia, el Tribunal de Apelaciones actuó correctamente al ordenar la excarcelación del recurrido, por ser el único remedio conforme a derecho. Así, concluyo que lo procedente es que el señor Aponte permanezca excarcelado mientras enfrenta el juicio en su contra. Por tanto, estoy conforme con el curso de acción tomado en el día de hoy por este Tribunal, pues reconocemos afirmativa y acertadamente la protección constitucional que cobija al señor Aponte.

Ciertamente, los estragos de un fenómeno natural podrían ser una justa causa para extender algún término prorrogable, pero este no es el escenario ante nos. El término máximo en el que el Estado puede mantener a un imputado detenido de forma preventiva es, sencillamente, improrrogable. No tiene excepción. Una vez transcurre el período de seis meses, vencido dicho término, la única acción que procede es la excarcelación y la continuación del proceso judicial con la persona en libertad. Precisamente, en situaciones extraordinarias como esta, los ciudadanos merecen y necesitan tener la protección que les brinda la Constitución, pues no podemos dejarlos en un

limbo jurídico a la merced de otras consideraciones. No debe existir una "fuerza mayor" que nuestra Ley Suprema.

## IV

Por todo lo anterior, estoy conforme con la determinación que emite hoy este Tribunal, mediante la cual confirma la sentencia emitida por el Tribunal de Apelaciones, en la cual se ordenó la excarcelación del señor Aponte mientras enfrenta el proceso criminal.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

Alexander Aponte Ruperto

    Recurrido

Núm. CC-2017-876    Certiorari

Opinión de Conformidad emitida por el Juez Asociado SEÑOR COLÓN PÉREZ.

En San Juan, Puerto Rico a 4 de enero de 2018.

Por entender que, **en escenarios como el de autos**, donde se trata de una persona que ha estado recluida en una institución penal por más de seis (6) meses sin que se le haya celebrado juicio, no cabe hablar de justa causa por parte del Estado Libre Asociado de Puerto Rico (E.L.A.), estamos conformes con el curso de acción seguido por una mayoría de este Tribunal en el presente caso. El mandato constitucional -- expresado en el Artículo 2, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico, Art. II Sec. 11 Const. ELA, LPRA, Tomo 1 -- es claro y no admite interpretaciones, como las que hoy postula el E.L.A. En ese sentido, procedía,

sin más, la excarcelación del señor Alexander Aponte Ruperto (en adelante "señor Aponte Ruperto"), en lo que esperaba por la celebración de su juicio. Veamos.

I.

El 4 de junio de 2017, el Ministerio Público presentó varias denuncias contra el señor Aponte Ruperto por violación a los Artículos 108 y 199(b) del Código Penal de Puerto Rico, 33 LPRA secs. 5161 & 5269(b); y a los Artículos 5.04 y 5.15 de la Ley de Armas, Ley Núm. 404-2000, 25 LPRA secs. 458c & 458k. Ese mismo día se determinó causa probable para su arresto y se ordenó el ingreso del acusado en una institución penal. **Al siguiente día, el 5 de junio de 2017, para ser específicos, el imputado fue recluido en una institución penal.**

Celebrada la vista preliminar, el 7 de agosto de 2017, se determinó que existía causa probable para acusar al señor Aponte Ruperto por los delitos imputados bajo la Ley de Armas. Días más tarde, entiéndase el 11 de agosto de 2017, el Ministerio Público presentó las acusaciones contra el señor Aponte Ruperto, conforme a los dispuesto en las Reglas de Procedimiento Criminal, 34 LPRA Ap. II.

Completado el trámite procesal antes expuesto, el Tribunal de Primera Instancia inicialmente señaló el inicio del juicio en su fondo para el 14 de septiembre de 2017, pero el mismo tuvo que ser suspendido, pues para esa fecha no se había completado el descubrimiento de prueba. En

consecuencia, el inicio del referido juicio fue pospuesto para el 11 de octubre de 2017, fecha en la que también fue suspendido, esta vez debido al paso por la isla de los huracanes Irma y María. En vista de ello, se re-señaló el comienzo del referido proceso para el 13 de noviembre de 2017. Ahora bien, llegado el 13 de noviembre de 2017, el juicio tampoco pudo iniciarse, toda vez que la representación del acusado no pudo presentarse al tribunal, quedando aplazado el mismo para el 7 de diciembre de 2017.

Así las cosas, el 7 de diciembre de 2017, el señor Aponte Ruperto, por conducto de su representación legal, presentó, ante el Tribunal de Primera Instancia, una *Solicitud de Auto de Habeas Corpus,* bajo el fundamento de que este había estado encarcelado por un periodo mayor de seis meses sin que se celebrara el juicio. Ello, en contravención al término constitucional de detención preventiva. Evaluados los planteamientos del señor Aponte Ruperto, el Tribunal de Primera Instancia declaró no ha lugar la solicitud de este último.

Insatisfecho con dicho proceder, el 18 de diciembre de 2017, el señor Aponte Ruperto presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En el mismo, bajo fundamentos similares a los expuestos en el foro primario, solicitó la revisión de la determinación del Tribunal de Primera Instancia. A dicha solicitud el Procurador General se opuso. En esencia, alegó que el

término de detención preventiva requiere un sistema de justicia funcional y que, como consecuencia del paso por el país del huracán María -- evento inimputable al E.L.A. -- no fue viable la celebración oportuna del juicio, por lo que no procedía la excarcelación del imputado.

Examinados los planteamientos de ambas partes, el foro apelativo intermedio declaró ha lugar la expedición del recurso de *certiorari,* tras concluir que el paso del huracán María no constituía justa causa para que no se hubiera celebrado el juicio contra el señor Aponte Ruperto. Dicha determinación fue oportunamente notificada a las partes.

No conforme aún, el pasado 22 de diciembre de 2017, el Procurador General presentó ante nos una *Moción Urgente en Auxilio de Jurisdicción* y Petición de *Certiorari.* Mediante dicha solicitud, y bajo fundamentos similares a los presentados en el Tribunal de Primera Instancia y en el Tribunal de Apelaciones, este solicitó que se revocase la determinación tomada por el foro apelativo intermedio, pues, en su opinión, no procedía la excarcelación del señor Aponte Ruperto.

Evaluados los planteamientos de ambas partes, hoy, una mayoría de este Tribunal, a nuestro juicio correctamente, determina – como correctamente lo determinó el foro apelativo intermedio -- que procede la excarcelación del señor Aponte Ruperto, toda vez que el término de detención preventiva no queda interrumpido por el paso por la Isla de

los huracanes Irma y María. Como ya adelantamos, con ese curso de acción seguido por la mayoría de este Tribunal, estamos conformes. Nos explicamos.

II.

Como es sabido, la Constitución del Estado Libre Asociado de Puerto Rico, en su Artículo 2, Sección 11, claramente establece que "*[l]a detención preventiva antes del juicio no excederá seis meses*". Art. II., Sec. 11 Const., LPRA, Tomo 1. (Énfasis suplido) Dicho término de seis (6) meses, a juicio de los miembros de la Convención Constituyente, quienes tuvieron la ingente tarea de redactar nuestra Carta Magna, era un término razonable para proteger la presunción de inocencia del acusado y mover la maquinaria de la administración de la justicia eficientemente. 3 Diario de Sesiones de la Convención Constituyente de Puerto Rico 1595 (1962). Sobre el particular, el profesor Ernesto Chiesa ha expresado que el término de seis (6) meses de detención preventiva busca:

> [P]roteger la seguridad pública al propiciar que los casos se atiendan sin demora. La seguridad pública es un interés básico para el cual se organizó un gobierno en la Constitución y merece tanta protección como el derecho de todo acusado a quedar libre cuando esa detención preventiva por el delito imputado exceda seis meses. E. Chiesa, Derecho Procesal Penal, 82 Rev. Jur. UPR 413, 431 (2012).

Por otra parte, sobre el carácter perentorio de dicho término, los miembros de la Convención Constituyente sostuvieron que el término "*es tan y tan perentorio que si*

*llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle por un habeas corpus inmediatamente que hayan pasado los seis meses*". Diario de Sesiones de la Convención Constituyente de Puerto Rico, supra, pág. 1595. (Énfasis suplido). Es decir, una vez transcurra el último día de los seis meses de detención preventiva sin que se haya iniciado el juicio, el acusado debe dejarse en libertad, sin dilación alguna. *Íd.*, pág. 1597.

Así pues, es a través del término límite de detención preventiva en cuestión que el poder del E.L.A. para restringir la libertad de una persona antes del juicio queda limitado de tal manera que no pueda abusar de su función pública como administrador de la justicia. *Sánchez v. González, Alcaide de Cárcel*, 78 DPR 849, 857 (1955). Ello, entre otras cosas, porque se pone en riesgo el derecho del acusado de que se le presuma inocente hasta que se pruebe lo contrario. *Íd.; Pueblo v. Pagán Medina*, 178 DPR 228,236 (2010). *Véase, además, Pueblo v. Paonesa*, 173 DPR 203, 210.

En ese sentido, los miembros de la Convención Constituyente consideraron preferible dejar en libertad al acusado, en lugar de derrotar la presunción de inocencia que le cobija, y se torne la encarcelación en un castigo anticipado. O.E. Resumil, *Derecho Procesal Penal,* New Hampshire Ed. Butterworth, 1990 T. 1, sec. 6.23, pág. 149; *Sánchez v. González, Alcaide de Cárcel, supra,* pág. 857;

*Pueblo v. Paonesa Arroyo*, *supra*, pág. 210 (2008). *Véase,*

además, Diario de Sesiones, *supra*, págs. 1593-1596; *Ruiz v. Alcaide*,

155 DPR 492, 504 (2001); *Iglesias v. Sria. Dept. Corr. y Rehab.*

479, 481 (1994). Para los miembros de la Convención Constituyente,

> [e]n ese sentido, fue su voluntad que **aun cuando pudiera existir de parte del Estado justa causa para la no celebración del juicio dentro del término estatutario señalado, ello no surtiría el efecto de prolongar la prisión en espera de juicio por más de 6 meses**, ni de impedir la excarcelación del acusado vencido dicho término, no obstante[,] el que para los fines de juicio rápido, en su expresión estatutaria, dicha justa causa pudiera impedir el sobreseimiento del proceso. *Sánchez v. González, Alcaide de Cárcel, supra*, pág. 855. (J. Negrón Fernández, Op. Particular) (Énfasis nuestro)

Ahora bien, pese a lo antes dicho, debemos dejar

meridianamente claro que el derecho constitucional bajo estudio no

es absoluto. *Sánchez v. González, Alcaide de Cárcel*, *supra*, pág.

857.[19] En particular, actos fraudulentos de parte del

acusado que impidan la eficaz administración de la

justicia no pueden servir de justificación para que --

en la eventualidad de que por dichos actos el E.L.A. esté

---

[19] En *Sánchez v. González, Alcaide de Cárcel*, resuelto mediante Sentencia, el Juez Asociado Negrón Fernández en una Opinión Particular expresó --sobre el derecho a libertad del acusado una vez transcurre el término constitucional de seis (6) meses sin que se haya iniciado el juicio -- que:

> El derecho que dimana de ese precepto, sin embargo, no es absoluto. Como es un derecho que madura normalmente por el mero lapso del tiempo, **ni la ilegalidad ni el fraude de un acusado--en actos tendentes a producir la incapacidad del Estado para someterle a juicio--** ampararían su ejercicio incondicional. Ese derecho, que no puede ser objeto de renuncia, tampoco puede ser objeto de rapto, **y de mediar circunstancias del carácter de las apuntadas**, el acusado no podría reclamarlo hasta que el Estado, pudiendo descargar prontamente su responsabilidad trayéndole a juicio, dejare de hacerlo. *Sánchez v. González, Alcaide,* 78 DPR 849, 858. (J. Negrón Fernández, Op. Particular) (Énfasis nuestro)

impedido de celebrar el juicio dentro del término de seis meses -- se deje en libertad al acusado. *Sánchez v. González, Alcaide de Cárcel*, *supra*, pág. 858.

Por último, conviene señalar que la garantía de libertad inmediata protegida por el término de seis meses no quiere decir que no se celebrará juicio contra el acusado. Diario de Sesiones, *supra*, pág. 1597. Es decir, la excarcelación del acusado no implica la desestimación de los cargos en su contra, sino que el mismo queda en libertad mientras se celebra el juicio. De otra parte, y con relación a lo anterior, se ha establecido también que no podrá exigírsele al acusado fianza para dejarlo en libertad mientras espera por el juicio. Diario de Sesiones, *supra*, pág. 1597; Olga Elena Resumil & José Rafael Lozada Medina, *La Oficina De Servicios Con Antelación al Juicio: Nuevo Acercamiento Para La Integración Del Sistema De Justicia Criminal*, 67 Rev. Jur. U.P.R. 507, 514 (1998). En ese sentido, se continuarán los procedimientos como si este hubiera prestado fianza. Diario de Sesiones, *supra,* pág. 1597.

Es precisamente, por todo lo antes dicho, que estamos conformes con el curso de acción seguido por una mayoría de este Tribunal en el día de hoy.

III.

Y es que, como mencionamos anteriormente, **en escenarios como el de autos**, donde hay una persona recluida en una

institución penal por más de seis (6) meses sin que se le haya celebrado juicio, no cabe hablar de justa causa por parte del E.L.A. El mandato constitucional -- perfectamente recogido en el Artículo 2, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico, *supra*, -- es claro y no admite interpretaciones como las que hoy plantea el Ministerio Público.

**El reconocimiento y la puesta en vigor de los derechos constitucionales que le asisten a todos los seres humanos que aquí habitan, no pueden estar a la merced de la ocurrencia, o no, de fenómenos naturales de los cuales estos no tienen control, y mucho menos de cuan eficiente es un gobierno -- el que sea -- para superar una crisis, lo que, sin duda, incide en el funcionamiento de los tribunales.** Eso no es justa causa. No hay un ápice de evidencia en el Diario de Sesiones de la Convención Constituyente, ni en su jurisprudencia interpretativa, que indique lo contrario. Así pues, llegado el 5 de diciembre de 2017 el señor Aponte Ruperto debió ser dejado en libertad mientras esperaba por la celebración de su juicio.

Ahora bien, precisa señalar aquí que lo antes expresado no es óbice para que el Ministerio Público, de así entenderlo necesario, y durante el proceso de *Habeas Corpus,* solicite la imposición al acusado de delito de aquellas condiciones (como lo puede ser el uso de grillete electrónico, entre

otros) que reduzca el riesgo de fuga y garantice su presencia en el juicio.

Siendo ello así, a juicio nuestro, no se cometió el error señalado por el Procurador General. Procedía, pues, confirmar el dictamen emitido por el foro apelativo intermedio.

IV.

**Establecido lo anterior, nos resulta lamentable que, algunos miembros de este Tribunal, no conformes con los estragos y las grandes pérdidas que ocasionó el huracán María en su paso por el país, hoy -- a través de sus votos disidentes -- quieran añadir al listado de daños ocasionados por el mencionado fenómeno atmosférico la pérdida de derechos constitucionales consagrados, clara y expresamente, en la Constitución del Estado Libre Asociado de Puerto Rico. Repetimos, nos resulta lamentable.**

V.

Es pues, por los fundamentos antes expuestos, que estamos conformes con lo hoy decidido por este Tribunal.

Ángel Colón Pérez
Juez Asociado

EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Alexander Aponte Ruperto<br><br>Recurrido | **Núm.** CC-2017-0876 | |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se unen los Jueces Asociados señor Martínez Torres, señor Kolthoff Caraballo y señor Feliberti Cintrón

San Juan, Puerto Rico, a 4 de enero de 2018

Por entender que la naturaleza extraordinaria de la controversia ante nuestra consideración exige expresiones contundentes, disiento del curso de acción tomado por una mayoría de los integrantes de este Tribunal. En tiempos de emergencia e inestabilidad constante, estimo que las dilaciones causadas por los huracanes Irma y María, así como el concomitante cierre de los tribunales y la interrupción de las labores judiciales, sí constituyen "justa causa" para eximir al Ministerio Público del cumplimiento con el término de detención preventiva. Por los fundamentos que se exponen a continuación, revocaría la determinación del Tribunal de Apelaciones y ordenaría la encarcelación del recurrido.

I.

Los hechos que subyacen la controversia se originan el 3 de junio de 2017, momento en que se presentaron varias denuncias contra el Sr. Alexander Aponte Ruperto (en

adelante, Aponte Ruperto o recurrido) por alegadas violaciones a los artículos 108 y 199(b) del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 5161, 5269(b); y varios cargos por alegadas violaciones a los artículos 5.04 y 5.15 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 458(c), 458(k) (en adelante, *Ley de Armas*). Desde el 5 de junio de 2017, Aponte Ruperto se hallaba detenido preventivamente.[20] El 7 de agosto de 2017, se celebró la vista preliminar en la que se determinó *causa* para acusar por las dos (2) infracciones a la *Ley de Armas*. Las correspondientes acusaciones se presentaron el 11 de agosto de 2017.[21]

El primer señalamiento de juicio estuvo pautado para el 14 de septiembre de 2017. Sin embargo, éste fue suspendido por razón de que no se había completado el descubrimiento de prueba. El juicio en su fondo, entonces, fue reseñalado para el 11 de octubre de 2017; el cual también fue suspendido por el paso del huracán María. Asimismo, el tercer señalamiento de juicio para el 13 de noviembre de 2017 fue suspendido porque Aponte Ruperto no pudo ser trasladado desde la institución penal hacia el tribunal.[22] El 7 de diciembre de

---

[20] Véase *Sentencia del Tribunal de Apelaciones*, en la pág. 8.

[21] El Ministerio Público alega en la *Acusación* que Alexander Aponte Ruperto, utilizando un arma de fuego prohibida por la *Ley de Armas*, apuntó al ser humano, Juan J. Aponte Ruperto sin justificación en ley para ello.

[22] Surge de la *Minuta del 13 de noviembre de 2017* que, durante la vista en el Salón de Sesiones 1104 del Tribunal de San Juan, la representación legal de Aponte Ruperto no compareció y que el recurrido "se encontraba sumariado y que la ruta no [había] llegado al Tribunal". Quedando asuntos por completar, el Hon. Aldo J. González Quesada reseñaló la vista para más tarde en la mañana. Así las cosas, a las 11:00 a.m. de ese mismo día, se volvió a ver el caso y, nuevamente,

2017, una vez más, el juicio fue suspendido dado que en dicha fecha el Ministerio Público entregó a la representante legal del recurrido documentos relacionados con el descubrimiento de prueba, y esta última, alegadamente, no estaba preparada para comenzar el juicio por la entrega tardía de dicha prueba.[23] En esa vista se señaló la celebración del juicio en su fondo para el 21 de diciembre de 2017.

El mismo 7 de diciembre de 2017, el recurrido presentó una petición de *habeas corpus* sosteniendo que había estado encarcelado por un periodo mayor al término de seis (6) meses de detención preventiva. Al día siguiente, el 8 de diciembre de 2017, el Tribunal de Primera Instancia denegó el recurso de *habeas corpus*. En específico, la *Resolución* emitida por el foro primario dispuso: "Escuchado los argumentos de las partes, el Tribunal declara NO HA LUGAR la solicitud de Habeas Corpus". *Resolución del 8 de diciembre de 2017*, en la pág. 1.

Inconforme, el 18 de diciembre de 2017, el recurrido presentó una *Petición de certiorari* y una *Moción en Auxilio*

---

no comparecieron la representación legal de Aponte Ruperto porque "se [encontraba] en la Sala 608" ni el recurrido porque "no fue traído en el día de hoy". *Id.* en la pág. 1. Asimismo, surge de la minuta que tampoco estuvieron presentes en la vista el agente a cargo del caso y el testigo del Ministerio Público. El foro primario ordenó que se hicieran gestiones para asegurar la comparecencia de Aponte Ruperto, que se le entregara copia de la minuta a su representante legal y que se citara al testigo del Ministerio Público.

[23] La *Minuta del 7 de diciembre de 2017* expone que, además de la entrega tardía de unas fotografías, la representante legal de Aponte Ruperto solicitaba el expediente médico del imputado. El Ministerio Público alegaba que dicho documento no se encontraba en su posesión. *Id.*

*de Jurisdicción para Solicitar la Paralización del Juicio Señalado para el 21 de diciembre de 2017* ante el Tribunal de Apelaciones.[24] La representación legal de Aponte Ruperto, en esencia, arguyó que las condiciones creadas por los huracanes "no pueden operar en contra del señor Aponte Ruperto ni en contra de su presunción de inocencia ni de la protección constitucional contra una detención preventiva mayor de 180 días". Véase *Petición de Certiorari ante el Tribunal de Apelaciones*, en las págs. 6-7. De otra parte, sostuvo que no se debe "[confundir] el término constitucional de prisión preventiva con el derecho de juicio rápido" y que, aunque exista "justa causa para la no celebración del juicio dentro del periodo constitucional de prisión preventiva ello no surtiría el efecto de prolongar la prisión en espera de juicio por más de 6 meses". *Id.* en la pág. 7.

En esa misma fecha, ese foro dictó una resolución mediante la cual le concedió al Ministerio Público un breve término para presentar su posición.[25] En dicha resolución, además, se ordenó al Departamento de Corrección y Rehabilitación y/o al encargado de la institución carcelaria en que estaba detenido Aponte Ruperto que sometiera su

---

[24] El **único** señalamiento de error presentado ante el foro apelativo intermedio lee como sigue: "Erró el Honorable Tribunal de Primera Instancia al denegar la excarcelación del señor Aponte Ruperto aun cuando existe una violación del derecho constitucional de prisión preventiva". *Sentencia del Tribunal de Apelaciones*, en la pág. 2.

[25] El Tribunal de Apelaciones ordenó al Ministerio Público expresarse en torno a las razones por las cuales no se debía paralizar el juicio señalado para el 21 de diciembre y ordenar la excarcelación inmediata del señor Aponte Ruperto. *Véase Resolución del 18 de diciembre de 2017*, en la pág. 2.

expediente, el cual específicamente debía incluir el *Auto de Prisión Provisional*.

Tras la entrega del *Expediente del Confinado* por parte del Departamento de Corrección y Rehabilitación y la oportuna comparecencia del Ministerio Público, el 20 de diciembre de 2017, el foro apelativo intermedio expidió el auto solicitado y emitió una sentencia revocando la determinación del Tribunal de Primera Instancia. En ésta, el Tribunal de Apelaciones resolvió que "el propósito medular de la cláusula de detención preventiva es, por un lado, asegurar la presencia del acusado en el juicio y, por el otro lado no castigarlo anticipadamente por una imputación de un delito del cual se le presume inocente". *Sentencia del Tribunal de Apelaciones*, en las págs. 8-9. Por tal razón, al foro apelativo intermedio no le convenció la postura del Ministerio Público a los efectos de que "las resoluciones emitidas por el Tribunal Supremo tras el paso de los Huracanes Irma y María paralizaron los términos de los procedimientos pendientes y su reactivación el 1 de diciembre de 2017". *Id.* en la pág. 9. El Tribunal de Apelaciones fundamentó este razonamiento en el hecho de que resulta "obvio que los miembros de la Asamblea Constituyente [conocían] que nuestro archipiélago es propenso a embates de huracanes, fenómenos atmosféricos y otros actos de Dios". *Id.* Por ende, concluyó que "[n]o podemos atribuir a ello haber redactado una cláusula de avanzada como la que nos ocupa sin tomar en cuenta el alcance de su diseño". *Id.* Así

las cosas, el foro apelativo intermedio revocó al foro primario y ordenó la excarcelación inmediata de Aponte Ruperto por haber estado detenido preventivamente en exceso del término de seis (6) meses sin haber comenzado el juicio.

Insatisfecho con la revocación por parte del Tribunal de Apelaciones, el 22 de diciembre de 2017, el Ministerio Público presentó ante este Tribunal una *Urgente moción en auxilio de jurisdicción* y un recurso de *certiorari*.[26] En la moción en auxilio de jurisdicción, el Ministerio Público solicitó que este Foro "[asumiera] jurisdicción inmediata del caso, de manera que se [atendiera] la controversia expeditamente y se [ordenara] el reingreso del acusado a prisión preventiva". *Urgente moción en auxilio de jurisdicción*, en la pág. 3. Asimismo, sostuvo que no ha conculcado el derecho del acusado habida cuenta de que el Ministerio Público no estaba en posición de comenzar el juicio como resultado del paso de los huracanes Irma y María y la suspensión de los términos judiciales decretados por este Tribunal. Por todo lo cual, solicitó que revocara la determinación del Tribunal de Apelaciones que declaró *ha*

---

[26] El **único** señalamiento de error presentado ante este foro lee como sigue:

Erró el Honorable Tribunal de Apelaciones al revocar al Tribunal de Primera Instancia, determinar que los términos de detención preventiva no quedaron interrumpidos a pesar de las circunstancias extraordinarias surgidas a través de toda la isla tras el devastador paso de los huracanes Irma y María, y en consecuencia, ordenar [la excarcelación] del señor Aponte Ruperto. *Petición de certiorari*, en las págs. 6-7.

*lugar* el recurso de *habeas corpus* presentado por el recurrido y el cual concluyó que se violentó el término constitucional de detención preventiva.

Ante la solicitud del Ministerio Público, se decidió mediante *Resolución*, emitida el 22 de diciembre de 2017, paralizar los procedimientos hasta tanto este Foro dispusiera lo contrario. Así, se le concedió a la representación legal de Aponte Ruperto hasta el 26 de diciembre de 2017, a las 3:30 p.m. para que presentara un escrito y mostrara causa por la cual no se debía expedir el auto solicitado y revocar el dictamen del Tribunal de Apelaciones.

El 26 de diciembre de 2017, el recurrido presentó su *Escrito para Mostrar Causa*, según ordenado en la *Resolución* emitida por este Tribunal. En esencia, la representación legal de Aponte Ruperto planteó que "el análisis pragmático que aduce el Ministerio Público no puede ser una suspensión automática ni total de todo el término de prisión preventiva". *Escrito para Mostrar Causa*, en la pág. 3. Asimismo, el recurrido arguyó que, si en la actualidad el Estado no tiene un plan de contingencia para lidiar con situaciones de tal envergadura, éste falló "en acreditar los esfuerzos para cumplir dicho protocolo y ni siquiera menciona qué diligencias razonables intentó realizar para adelantar el [caso], ello debería ser suficiente para que el retraso causado por el Huracán sea imputado a ese mismo Estado". *Id.*

Con el beneficio de la comparecencia de ambas partes, se está en posición de resolver.

## II.

La controversia planteada en el presente caso requiere un análisis del impacto de los fenómenos naturales en los procedimientos penales que se ventilan en los tribunales y si las dilaciones causadas por estos constituyen "justa causa" para eximir al Ministerio Público del cumplimiento con el término de detención preventiva.

## A.

Ante las amenazas y eventual paso de los huracanes Irma y María, este Tribunal emitió varias *Resoluciones* mediante las cuales suspendió las labores en la Rama Judicial, paralizó los términos judiciales y dispuso su plan de contingencia ante estos fenómenos atmosféricos. Véase *In re: Extensión de Términos ante el paso del Huracán María* [II], 2017 TSPR 175; *In re: Extensión de Términos ante el paso del Huracán María* [I], 2017 TSPR 174; *In re: Extensión de términos ante el paso del Huracán Irma y la pérdida del servicio eléctrico*, 2017 TSPR 169; *In re: Medidas judiciales ante el paso del Huracán Irma*, 2017 TSPR 167.

En *In re: Medidas judiciales ante el paso del Huracán Irma*, *supra*, se decretó "la suspensión de los trabajos en la Rama Judicial a partir de las 12:00 del mediodía del 5 de septiembre de 2017, y hasta nuevo aviso". Luego, en *In re: Extensión de términos ante el paso del Huracán Irma y la pérdida del servicio eléctrico*, *supra*, se explicó que el

paso cercano del huracán Irma por Puerto Rico provocó que "el sistema eléctrico [sufriera] averías a través de todo Puerto Rico" y que para el 11 de septiembre de 2017 aún "no se [había] restablecido en su totalidad el servicio de energía eléctrica en muchos sectores". En atención a esta realidad y para "evitar que las partes se [viesen] imposibilitadas de presentar sus recursos por esta situación", se extendieron los términos que quedaron en suspenso desde el martes, 5 de septiembre de 2017 y que hubiesen vencido el lunes, 11 de septiembre de 2017, hasta el miércoles, 13 de septiembre de 2017. *Id.* De igual forma, previo a la llegada del huracán María, se decretó "la suspensión de los trabajos en la Rama Judicial a partir del martes[,] 19 de septiembre de 2017 hasta nuevo aviso". *In re: Extensión de Términos ante el paso del Huracán María* [1], *supra.*

Así las cosas, el 16 de octubre de 2017, se tomó conocimiento judicial de los "estragos severos" que causó el paso del huracán María "en todos los componentes de la sociedad puertorriqueña" y se reconoció que la Rama Judicial no estuvo "exenta de la emergencia causada por el evento atmosférico, pues muchos tribunales sufrieron daños graves en sus planteles e infraestructura física". *In re: Extensión de Términos ante el paso del Huracán María* [II], *supra.* Asimismo, se informó que "el sistema eléctrico, de agua y de telecomunicaciones quedó interrumpido para la gran mayoría de los centros judiciales y salas municipales, así como para

jueces y juezas, funcionarios y funcionarias, abogados y abogadas y la población general a la que estamos llamados a servir". *Id.* Ante el estado en el cual se encontraba y encuentra aún el País, la Oficina de Administración de los Tribunales "diseñó un plan para que, a partir del miércoles, 1 de noviembre de 2017 se [comenzaran] a atender en el Tribunal de Primera Instancia los casos y vistas que ya estaban en calendario". *Id.* en las págs. 1-2. Además, se dispuso que desde esa misma fecha se comenzarían a "atender las vistas que quedaron suspendidas por el paso del huracán, según estas sean reseñaladas oportunamente por el Tribunal de Primera Instancia". Por último, se decretó que la paralización de los términos suspendidos culminaría el viernes, 1 de diciembre de 2017. *Id.* en la pág. 2.

La preparación y respuesta ante esta situación extraordinaria no ha sido distinta a otras medidas tomadas por este Tribunal en circunstancias similares, aunque jamás de igual magnitud. Por ejemplo, tras una interrupción masiva del servicio de electricidad, en *O. E. G. v. Rivera, Cintrón*, 153 D.P.R. 184 (2000) se resolvió que en las "circunstancias específicas de estos casos, en los que se interpuso un acontecimiento de **fuerza mayor** al cumplimiento de las obligaciones procesales por parte de los peticionarios, son de aplicación las normas de equidad". *Id.* en la pág. 194 (cita omitida) (énfasis suplido). En esa ocasión, para disponer de una controversia excepcional, se fundamentó la decisión en la máxima de que: "El derecho es **razonable** y no

exige lo que resulta **imposible** de cumplir". *Id.* en la pág. 193 (énfasis suplido).

A tenor con estas expresiones, hace más de medio siglo se evaluó el alcance, precisamente, de lo que constituye un "acto de Dios" o "fuerza mayor". Se definió este concepto como aquel que, "se ocasiona exclusivamente por **la violencia de la naturaleza**, por una fuerza de los elementos que la capacidad humana **no puede prever ni impedir**, como por ejemplo por un relámpago, un tornado, una tromba marina, **un huracán** o por cosas similares". *Camacho v. Compañía Popular de Transporte, Inc.*, 69 D.P.R. 724, 729 (1949) (énfasis suplido). Véase además, *Publio Díaz v. E.L.A.*, 106 D.P.R. 854, 863(1978); *Rivera v. Caribbean Home Const. Corp.*, 100 D.P.R. 106, 112-13 (1971). En cuanto al contexto particular de fenómenos climatológicos, aunque "ocurren con relativa frecuencia y [se deben] tomar las medidas que aconseja la prudencia y la ciencia para precaver desgracias y ruinas", hay tempestades "tan vast[as] o tan fuertes cuyos terribles efectos la ciencia humana no puede evitar". *Rivera v. Caribbean Home Const. Corp.*, *supra*, en la pág. 118.

Si bien la controversia ante la consideración de este Tribunal versa sobre un término penal y procesal de carácter constitucional, pero con efectos sustantivos en derecho, su cumplimiento por parte del Ministerio Público no estuvo exento de todas las interrupciones y contratiempos que ocasionó el paso de los huracanes Irma y María en toda la Isla.

**B.**

El artículo II, sección 11 de la Constitución de Puerto Rico establece que la "detención preventiva antes del juicio no excederá de seis meses". El término "detención preventiva" se refiere al periodo anterior al juicio, en el cual la persona acusada se encuentra detenida preventivamente (sumariada) porque no prestó la fianza impuesta y está en espera de la celebración del correspondiente proceso criminal. *Pueblo v. Pagán Medina*, 178 D.P.R. 228, 236 (2010); *Ruiz v. Alcaide*, 155 D.P.R. 492, 502 (2001). Se ha explicado que la cláusula constitucional de detención preventiva tiene un propósito dual: "asegurar la comparecencia del acusado a los procedimientos en defecto de la prestación de una fianza y, a su vez, evitar que a éste se le castigue excesivamente por un delito por el cual no ha sido juzgado". *Pueblo v. Pagán Medina*, *supra*, en la pág. 236; *Pueblo v. Paonesa Arroyo*, 173 D.P.R. 203 (2008).

En la Convención Constituyente, varios Delegados se expresaron en torno a las consideraciones procesales y la normativa vigente al momento de su aprobación que inspiraron esta cláusula. En particular, el Delegado Reyes Delgado, en un turno de exposición, explicó que:

> Lo que hay que tener en cuenta aquí es si la situación de los acusados se va a mejorar en alguna forma sustancial con esta disposición. Y se mejora. ¿Se pone en peligro la administración de la justicia? No. ¿Puede darse un término más corto sin poner en peligro la administración de la justicia criminal? No. Ya la [Asamblea] Legislativa insular **ha fijado por ley términos que se consideran razonables para que se actúe**; es decir, dos meses para radicar la acusación, cuatro meses de la

radicación de la acusación, o sea 120 días para traerlo a juicio. Si dentro de esos seis meses ahora no se le celebra juicio, el fiscal pide el archivo y sobreseimiento y especialmente si se trata de un *felony*, procede otra vez a arrestar al individuo y a recluirlo preventivamente y puede tenerlo otros seis meses en la cárcel sin celebrarle juicio.

Y a eso es a lo que vamos nosotros encaminando este precepto: que se usen los seis meses de que la legislación local ha tenido a bien proveer al ministerio público para que **haga efectiva la maquinaria del pueblo en la administración de la justicia penal**. Pero que después, por no haber una disposición de esta naturaleza, no se burle lo que se ha creído que es suficiente para procesar a un hombre y mandarlo a la cárcel. Yo entiendo que, si se rebajaran a menos de seis meses, estaríamos poniendo en peligro el principio total y entorpeciendo la administración de la justicia. *4 Diario de Sesiones de la Convención Constituyente* 1595-96, Ed. Equity Publishing Corp. 1962 (énfasis suplido).

De estas expresiones surgen unas aseveraciones importantes que ayudan a entender la *raison d'être* de la cláusula de detención preventiva. En primer lugar, se constata que los delegados de la Convención Constituyente utilizaron los términos estatutarios de juicio rápido, del entonces vigente Código de Enjuiciamiento Criminal, como referente para redactar dicha disposición constitucional. Es decir, la cláusula busca proveerle una garantía a la persona detenida preventivamente y asegurarse que el Ministerio Público cumpla su deber de celebrarle un juicio prontamente.[27]

---

[27] El Tribunal de Apelaciones al expresarse sobre el derecho a juicio rápido y la cláusula constitucional sobre detención preventiva indicó que ambas disposiciones "no protegen el mismo bien". *Sentencia del Tribunal de Apelaciones*, en la pág. 9. En apoyo a esta expresión citan, entre otros, la opinión disidente de la Juez Fiol Matta en *Ex Parte Ponce Ayala*. Lo cierto es que la aseveración del foro apelativo intermedio no refleja adecuadamente lo señalado en dicha opinión disidente. Allí se insistió en lo siguiente: "Es cierto que la figura jurídica de juicio rápido es distinta

La afinidad entre ambas garantías penales adquiere mayor relevancia si se considera que el Delegado Reyes Delgado apuntó que uno de los propósitos de la detención preventiva es, precisamente, hacer "efectiva la maquinaria del pueblo en la administración de la justicia penal". *Id.*

Cónsono con este análisis, y al reseñar la breve discusión suscitada en la Convención Constituyente, el Juez Asociado señor Negrón Fernández sostuvo, mediante opinión concurrente en *Sánchez v. González*, 78 D.P.R. 849 (1955) (Sentencia), que:

> El derecho que dimana de ese precepto, sin embargo, **no es absoluto.** . . . Ese derecho, que no puede ser objeto de renuncia, tampoco puede ser objeto de rapto, y de mediar circunstancias [de ilegalidad o fraude], el acusado no podría reclamarlo **hasta que el Estado, pudiendo descargar prontamente su responsabilidad trayéndole a juicio, dejare de hacerlo.** *Id.* en la pág. 858 (énfasis suplido).

En *Pueblo v. Pagán Medina*, *supra*, en la pág. 237, se hizo referencia, con aprobación, a estas expresiones por parte del Juez Asociado señor Negrón Fernández. En dicho caso, se excluyó del cómputo de detención preventiva todo el tiempo que estuvo pendiente el trámite de procesabilidad de Pagán Medina dado que el Ministerio Público estuvo **impedido** de continuar el proceso judicial en su contra. Precisamente, la lógica de la decisión en *Pueblo v. Pagán Medina*, *supra*,

---

a la de detención preventiva, sin embargo, ambas tienen un propósito similar y *los constituyentes utilizaron la regulación vigente de la primera para calcular el período de la segunda*". *Ex Parte Ponce Ayala*, 179 D.P.R. 18, 35 (2010) (citas omitidas) (Fiol Matta, op. disidente a la cual se unió Rodríguez Rodríguez).

es que corresponde **excluir** del término de detención preventiva aquel tiempo en que resulta **imposible** para el Ministerio Público procesar a un imputado de delito.[28] Este razonamiento guarda correspondencia con las expresiones del Delegado Reyes Delgado sobre la importancia de que, para que se active esta protección constitucional, el Ministerio Público pueda emplear los procedimientos necesarios para celebrarle juicio a una persona sumariada.

**III.**

Ciertamente, como se discutió anteriormente y ya reconoció este Tribunal, las consecuencias directas e indirectas del paso de los huracanes Irma y María por el País imposibilitaron la continuación de cientos de procedimientos judiciales. Véase *In re: Extensión de Términos ante el paso del Huracán María* [II], *supra*. En específico, la gran mayoría de aquellos casos señalados para celebrarse entre el mediodía del 5 de septiembre y el 13 de septiembre de 2017, y luego entre 19 de septiembre y el 1 de noviembre de 2017; fecha en la cual se dispuso que se comenzarían a atender en el Tribunal de Primera Instancia los casos y vistas que ya estaban en calendario. Esta situación de emergencia y todas sus funestas repercusiones

---

[28] El profesor Chiesa Aponte coincidió con esta lógica, contrario a lo que intiman miembros de este Tribunal, y expresó que nuestra opinión en *Pueblo v. Pagán Medina, supra*, está "respaldada por el sentido común" dado que "este derecho no puede ser tan absoluto que no admita interrupción cuando el Estado está impedido de continuar los procedimientos". E.L. Chiesa Aponte, *Contestación al Discurso del Licenciado Harry Padilla Martínez*, 12 Rev. Acad. Puer. Juris. y Leg. 46, 56-57 (2014).

no se pueden catalogar sino como un acontecimiento de fuerza mayor, una "violencia de la naturaleza, por una fuerza de los elementos que la capacidad humana no [pudo] prever ni impedir". *Camacho v. Compañía Popular de Transporte, Inc.*, 69 D.P.R. 724, 729 (1949).

Ahora bien, dado que los huracanes Irma y María constituyeron un acontecimiento de fuerza mayor, corresponde analizar si el Ministerio Público estuvo en posición de "descargar prontamente su responsabilidad" de traer a juicio a las personas detenidas preventivamente. *Sánchez v. González*, *supra*. La respuesta, inexorablemente, tiene que ser en la **negativa**.

La realidad fáctica de la situación de emergencia en la cual se encontraba la Rama Judicial imposibilitó que el Ministerio Público pudiese hacer uso efectivo de "la maquinaria del pueblo en la administración de la justicia penal". *4 Diario de Sesiones de la Convención Constituyente*, *supra*, en la pág. 1596. A diferencia de una mayoría de los integrantes de este Tribunal, soy del criterio que las consecuencias imprevistas e inminentes de los huracanes Irma y María privaron al Ministerio Público de los mecanismos que de ordinario tiene a su disposición para asegurar ese **delicado balance** entre los derechos de los imputados de delitos y la protección a la seguridad de la ciudadanía en general.[29] Por ende, es forzoso concluir que existe "justa

---

[29] En el contexto particular de los hechos de este caso, hubo ciertas dilaciones en el procedimiento, como la dificultad en la transportación del recurrido a la vista del 13 de

causa" para **excluir** del término de detención preventiva aquel tiempo en que resultó inasequible para el Ministerio Público, por razón de las dilaciones causadas por fenómenos naturales, procesar a una persona imputada de delito. Véase *Pueblo v. Pagán Medina*, *supra*.

En el caso ante la consideración de este Tribunal, el término de detención preventiva comenzó a transcurrir el 5 de junio de 2017. En virtud de los días en los que las labores de los tribunales se interrumpieron mediante las distintas resoluciones emitidas por este Tribunal, la fecha de vencimiento de dicho término es el 22 de enero de 2018.[30] Ello, puesto que los cincuenta y dos (52) días en los que la Rama Judicial operó de forma limitada y no se atendieron vistas en los tribunales, deben ser substraídos del cómputo.[31]

**IV.**

Por todo lo cual, revocaría la sentencia del Tribunal de Apelaciones y resolvería que quedan excluidos de los

_____

noviembre de 2017, atribuibles a los efectos del paso del huracán María. Véase *Minuta del 13 de noviembre de 2017*.

[30] La sentencia del foro apelativo intermedio, citando el *Expediente del Confinado* provisto por el Departamento de Corrección y Rehabilitación, expresa que, a la fecha del 19 de diciembre de 2017, el recurrido tenía ciento noventa y siete (197) días cumplidos en detención preventiva. *Sentencia del Tribunal de Apelaciones*, en la pág. 4, n. 2. Se utilizan estas expresiones y la fecha en la cual Aponte Ruperto ingresó en una institución carcelaria, el 5 de junio de 2017, para calcular la fecha real de vencimiento del término tras excluir los días interrumpidos por los huracanes Irma y María.

[31] Como se indicó, no fue hasta el 1 de noviembre de 2017 que se reanudaron las labores en las distintas salas judiciales. *In re: Extensión de Términos ante el paso del Huracán María* [II], *supra*.

cómputos para determinar el término de seis (6) meses de detención preventiva todos los días en que los tribunales estuvieron cerrados y no disponibles para celebrar juicios, y que, consiguientemente, el Ministerio Público se vio privado de los mecanismos para cumplir con los términos señalados, a consecuencia de los huracanes que afectaron a Puerto Rico. Entiéndase, desde el mediodía del 5 de septiembre hasta el 13 de septiembre de 2017, y desde el 19 de septiembre hasta el 1 de noviembre de 2017.

En consecuencia, ordenaría la encarcelación del recurrido Alexander Aponte Ruperto.


                                Anabelle Rodríguez Rodríguez
                                     Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Peticionario

         v.

                             CC-2017-0876

Alexander Aponte Ruperto

      Recurrido

Opinión Disidente emitida por el Juez Asociado señor Martínez Torres

En San Juan, Puerto Rico, a 4 de enero de 2018.

En muchos lugares del mundo, luego de un desastre natural, las cárceles quedan en mal estado y los reos se escapan. Tras el azote de los huracanes Irma y María, eso no pasó en Puerto Rico. La estructura de nuestras cárceles resistió el embate de la naturaleza. No obstante, lo que los huracanes Irma y María no lograron lo hace ahora este Tribunal: Abre de par en par los barrotes de la prisión para que salgan a la calle los sumariados que no fueron procesados durante la emergencia.

El límite constitucional de seis meses a la detención preventiva (Const. PR, Art. II, Sec. 11)

tiene el propósito de asegurar que nadie esté en la cárcel por un periodo de tiempo irrazonable sin que se le haya enjuiciado. Se evita así que la detención preventiva se convierta en un castigo sin una convicción previa. Pueblo v. Pagán Medina, 178 DPR 228 (2010). Es evidente que la premisa detrás de este precepto constitucional es que el acusado pueda ser sometido a juicio. Esa premisa no se cumple en este caso.

Al disponer que la fuerza mayor de la emergencia tras el embate de dos huracanes fuertes no interrumpe el periodo de detención preventiva, el Tribunal responsabiliza al Pueblo de Puerto Rico por la interrupción de las labores judiciales que impidió que el acusado fuera enjuiciado en el plazo de seis meses. En otras palabras, se penaliza al Pueblo por no procesar a un acusado que por fuerza mayor no se podía procesar. El Tribunal se niega a aplicar el principio que antes nos ha guiado, en el sentido de que si no se puede procesar al imputado es imposible que este se ampare en el mero transcurso de los seis meses para reclamar su libertad sin prestar fianza. Véase, Pueblo v. Pagán Medina, ibíd. Que, en efecto, era imposible celebrar el juicio en medio de la emergencia ahora no es relevante para este Tribunal. La culpa es del Ministerio Público por no hacer lo imposible.

En definitiva, la decisión que hoy emitimos amparados en una llamada "factura más ancha" creará una estampida de recursos para abrir de par en par los barrotes de las

cárceles. Otra vez, esa "factura más ancha" resulta ser "la factura más costosa jamás pagada por el Pueblo de Puerto Rico". RDT Const. Corp. v. Contralor I, 141 DPR 424, 469 (1996), opinión concurrente del Juez Asociado Señor Negrón García. Como resultado, esta decisión es más dañina para el sistema judicial que los dos huracanes categoría 4 que azotaron a Puerto Rico en septiembre de 2017.

Y es que los vientos de esos huracanes no solo arrasaron con los techos de muchas viviendas. Parece que con los vientos huracanados el sentido común se fue volando también. Ojalá lo encontremos de nuevo, aunque sea debajo de los escombros que esta decisión nos deje.


                                    RAFAEL L. MARTÍNEZ TORRES
                                         Juez Asociado